1   LAW OFFICE OF KURT DAVID HERMANSEN
    Kurt David Hermansen, Cal. Bar No. 166349
2   110 West C Street, Suite 1810
    San Diego, California  92101-3909
3   Telephone:    (619) 236-8300
    Facsimile:     (619) 236-8400
4   Cellular:       (619) 436-8117
    KDH@KurtDavidHermansen.com
5   Attorney for Defendant
    JOSE ALFONSO CORTEZ-HERRERA
6

7

8

9                      UNITED STATES DISTRICT COURT

10                  SOUTHERN DISTRICT OF CALIFORNIA

11                    **(HONORABLE M. JAMES LORENZ)**

12   _____

13   UNITED STATES OF AMERICA,          )   Case No.  08cr1379 L
                                        )
14                  Plaintiff,          )   MEMORANDUM OF POINTS AND
                                        )   AUTHORITIES IN SUPPORT OF
15   v.                                 )   DEFENDANT'S MOTIONS
                                        )
16   JOSE ALFONSO CORTEZ-HERRERA,       )
                                        )
17                  Defendant.          )
                                        )
18                                      )

19   _____

20   **I.      STATEMENT OF FACTS**[1/]

21        Jose Alfonso Cortez-Herrera is accused of attempted entry after deportation in violation

22   of 8 U.S.C. § 1326.

23   **II.     MOTION TO COMPEL DISCOVERY**

24        Defendant moves for the production of further discovery pursuant to FED. R. CRIM. P.

25   12(b)(4) and 16.  This request is not limited to items the prosecutor knows of, but rather includes

26

27   _____

28        [1/] The facts contained in this motion are not concessions or admissions.  Instead, they are
     based primarily on a review of the discovery provided by the government.  Mr. Cortez-Herrera
     reserves the right to challenge the accuracy of these alleged facts, and in no way admits their
     accuracy.

all discovery listed below that is in the custody, control, care, or knowledge of any investigative or other governmental agencies closely connected to the prosecution. *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *United States v. Bryan*, 868 F.2d 1032, 1035 (9th Cir. 1989).

1.    Defendant's "A" File and Deportation Tapes. **Mr. Cortez-Herrera requests a _complete_ and accurate copy of any and all "A" files the government alleges are his, and copies of any tape-recorded deportation hearings, and any transcripts thereof, in support of any deportation order executed against Defendant.**

The government must produce documents which are material to the preparation of a defense. *See* FED. R. CRIM. P. 16(a)(1)(C). Here, Mr. Cortez-Herrera meets all the requirements for production under Rule 16. He asks to inspect his "A" file. The government is in possession of it. And, the following discussion demonstrates the materiality of the "A" file.

The "A" file plays a significant role in a prosecution under 8 U.S.C. § 1326. INS Officers routinely testify at trial that an "A" file contains *all* of the immigration contacts between the government and the individual. *See United States v. Blanco-Gallegos*, 188 F.3d 1072 (9th Cir. 1999) (an INS A-File identifies an individual by name, aliases, date of birth, and citizenship, and all records and documents related to the alien are maintained in that file). Thus, the "A" file is presumptively material in § 1326 prosecutions.

Additionally, the "A" file may contain *Brady* material. *See Brady v. Maryland*, 373 U.S. 83 (1963). Armed with the "A" file, Mr. Cortez-Herrera could use documents which may help his defense or point to specific documents that should be in the file. The absence of records is relevant and admissible. In fact, there is a specific hearsay exception dealing with absence of records. *See* FED. R. EVID. 803(10). Without an examination of the complete "A" file, however, Mr. Cortez-Herrera cannot use this effective technique. Mr. Cortez-Herrera can use absence of records to establish his innocence, or at least, impeach the government's witnesses. Thus, the complete "A" file is material to Mr. Cortez-Herrera's defense and the failure to order inspection will effect his substantial rights.

Mr. Cortez-Herrera expects the government will attempt to have an "expert witness" testify that based upon a review of Mr. Cortez-Herrera's "A" file, Mr. Cortez-Herrera would not

1  have received permission to return to the United States, and based on a review of the "A" file,

2  Mr. Cortez-Herrera was not a United States citizen.  If, however, the Court allows the testimony,

3  the government must produce the materials — the "A" file — the expert uses to reach his or her

4  opinions.  *See United States v. Zanfordino*, 833 F. Supp. 429, 432-33 (S.D.N.Y. 1993).  In

5  *Zanfordino*, the defense requested discovery regarding the basis of the expert's testimony.  The

6  district court granted the request, noting that a cross examination conducted without that

7  information implicated due process and the Confrontation Clause.  833 F. Supp. at 432.  "If an

8  expert is testifying based in part on undisclosed sources of information, cross-examination

9  vouchsafed by that Clause would be unduly restricted."  *Id.*  In addition to the constitutional

10 concerns, *Zanfordino* also relied, as does Mr. Cortez-Herrera, on Rule 16, *Jencks* and Fed. R.

11 Evid. 705.  *Id.* at 432-33.  Rule 16 requires disclosure of "the bases and reasons for [the

12 expert's] opinions."  FED. R. CRIM. P. 16(a)(1)(E).  The rules of evidence impose a similar

13 requirement: "[t]he expert may in any event be required to disclose the underlying facts or data

14 on cross-examination."  FED. R. EVID. 705.  As the *Zanfordino* court observed, "delaying such

15 disclosure until [cross examination] would merely prolong the trial."  833 F. Supp. at 433.

16      Finally, Mr. Cortez-Herrera expects that government witnesses will use the "A" file to

17 refresh memory.  A defendant is entitled to inspect materials that a government witness uses "to

18 refresh memory for the purpose of testifying, either — (1)while testifying, or (2) before

19 testifying, if the court in its discretion determines it is necessary in the interests of justice."  FED.

20 R. EVID. 612; *United States v. Sai Keung Wong*, 886 F.2d 252, 257 (9th Cir. 1989).  While this

21 Court has discretion to deny inspection when the witness reviews material before testifying, the

22 Court must order inspection when the witness reviews materials while on the stand.  *See*

23 *Chalmers v. City of Los Angeles*, 762 F.2d 753, 761 (9th Cir. 1985) (written aids may be used

24 to stimulate a recollection, but such writings must be made available for inspection and cross-

25 examination by the adverse party); *Spivey v. Zant*, 683 F.2d 881, 885 n.5 (5th Cir. 1982) (habeas

26 defendant entitled to inspect and use during cross-examination whatever portions of his file that

27 his former attorney used to refresh his memory); *Marcus v. United States*, 422 F.2d 752, 754

28 (5th Cir. 1970) (well settled that if a witness uses any paper or memoranda while on the stand

1   to refresh memory, the opposing side, upon demand, has a right to examine the paper or memo-

2   randa and use it in cross-examination); *National Dairy Products Corp. v. United States*, 384

3   F.2d 457, 461 (8th Cir. 1967) (finding prejudicial error where the court let the government

4   refresh a witness's memory with a grand jury transcript and where the court did not let the

5   defendant inspect the transcript; *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 233

6   (1940) (material used to refresh recollection must be shown to opposing counsel upon demand).

7           2.    Defendant's Statements.  The Government must provide Defendant with

8   copies of: (a) *all* written or recorded statements made by Defendant; (b) the substance of any

9   statements Defendant made which the Government intends to offer in evidence at trial; (c) any

10  response by Defendant to interrogation; (d) the substance of any oral statements which the Gov-

11  ernment intends to introduce at trial and any written summaries of Defendant's oral statements

12  contained in the handwritten notes of Government agents; (e) any response Defendant gave to

13  any *Miranda* warnings which may have been given to Defendant; and, (f) any other statements

14  by Defendant.  The Government must reveal *all* statements made by a defendant, whether oral

15  or written, regardless of whether the Government intends to make any use of those statements.

16  See FED. R. CRIM. P. 16(a)(1)(A); *id.* advisory committee's note (1991 amendments); *see also*

17  *United States v. Bailleaux*, 685 F.2d 1105, 1113-14 (9th Cir. 1982).

18          3.    Arrest Reports, Notes and Dispatch Tapes.  Defendant also specifically

19  moves for a copy of all arrest reports, notes, dispatch or any other tapes, and TECS records that

20  relate to the circumstances surrounding Defendant's arrest or any questioning.  This request

21  includes any **rough notes**, records, reports, transcripts or other documents in which Defendant's

22  statements or any other discoverable material is contained.  Such material is discoverable under

23  FED. R. CRIM. P. 16(a)(1)(A) and *Brady v. Maryland*, 373 U.S. 83 (1963).  Notably, the

24  Government must produce arrest reports, investigators' notes, memos from arresting officers,

25  dispatch tapes, sworn statements, and prosecution reports pertaining to Defendant.  *See United*

26  *States v. Riley*, 189 F.3d 802, 806-08 (9th Cir. 1999); FED. R. CRIM. P. 16(a)(1)(B)-(C); FED. R.

27  CRIM. P. 12(i), 26.2.  **Defendant requests preservation of rough notes, whether or not the**

28  **government deems them discoverable.**

1        4.    Brady Material.  Defendant moves for production of all documents,

2    statements, agents' reports, and tangible evidence favorable to Defendant on the issue of guilt

3    or which affects the credibility of the Government's witnesses.  Impeachment and exculpatory

4    evidence fall within the definition of evidence favorable to the accused.  *See Brady v. Maryland*,

5    373 U.S. 83 (1963); *United States v. Bagley*, 473 U.S. 667, 676-78 (1985); *United States v.*

6    *Agurs*, 427 U.S. 97, 102-06 (1976).

7        5.    PINPOINT DISCOVERY REQUESTS FOR *Brady* Material.

8            **a.    acquired or derivative citizenship**

9        Defendant moves for production of all documents, statements, agents' reports, and

10   tangible evidence favorable to Defendant on the issue of guilt on the issue of "alienage."

11   Specifically, a person born outside the United States is not an alien for purposes of 8 U.S.C.

12   § 1326 if he or she has acquired or derived citizenship through a parent under the immigration

13   laws of the United States.

14       Citizenship for one not born in the United States may be acquired "only as provided by

15   Acts of Congress."  *Miller v. Albright,* 523 U.S. 420, 424 (1998).  Since the enactment of the

16   first naturalization statute in 1790, our immigration laws have conferred derivative citizenship

17   on the children of a naturalized citizen, provided certain statutorily prescribed conditions are

18   met.  *Minasyan v. Gonzales*, 401 F.3d 1069, 1075 (9th Cir. 2005).

19       As with all forms of citizenship, derivative citizenship is determined under the law in

20   effect at time the critical events giving rise to eligibility occurred.  *Minasyan*, 401 F.3d at 1075;

21   *Montana v. Kennedy*, 366 U.S. 308 (1961).  For example, under INA § 321(a),[2] citizenship can

22   be transmitted automatically upon a parent's naturalization.  *Minasyan*, 401 F.3d at 1075.  "The

23   applicable law for transmitting citizenship to a child born abroad when one parent is a U.S.

24   citizen is the statute that was in effect at the time of the child's birth."  *Solis-Espinoza v.*

25   *Gonzales*, 401 F.3d 1090, 1092 (9th Cir. 2005); *Scales v. INS,* 232 F.3d at 1159, 1162-63 (9th

26   Cir. 2005); *United States v. Viramontes-Alvarado,* 149 F.3d 912, 915 (9th Cir. 1998).

27

28

---

[2]  INA § 321 (8 U.S.C. § 1432) was repealed Oct. 30, 2000.

1    "Until the claim of citizenship is resolved, the propriety of the entire [deportation] pro-

2    ceeding is in doubt." *Frank v. Rogers,* 253 F.2d 889, 890 (D.C. Cir. 1958). *See Minasyan v.*

3    *Gonzales*, 401 F.3d 1069, 1075 (9th Cir. 2005) (citing *Frank v. Rogers* and *Ng Fung Ho v.*

4    *White,* 259 U.S. 276, 284 (1922) ("Jurisdiction in the executive to order deportation exists only

5    if the person arrested is an alien.  The claim of citizenship is thus a denial of an essential juris-

6    dictional fact.").  Where someone who has been ordered removed claims that he is a United

7    States citizen and that he is therefore not subject to removal, the federal courts have jurisdiction

8    to determine his nationality claim.  *Minasyan v. Gonzales*, 401 F.3d 1069, 1074 (9th Cir. 2005).

9    Because "the INA explicitly places the determination of nationality claims solely in the hands

10   of the courts of appeals and (if there are questions of fact to resolve) the district courts," the

11   federal courts are not required to give *Chevron* deference to the agency's interpretation of the

12   citizenship laws.  *Minasyan*, 401 F.3d at 1074.  In addition, a claim to citizenship need not be

13   exhausted.  *Minasyan*, 401 F.3d at 1075.  The statutory administrative exhaustion requirement

14   of § 1252(d)(1) does not apply to a person with a non-frivolous claim to USC status even if he

15   has previously been (illegally) deported by the government.  *Minasyan*, 401 F.3d at 1075.

16          6.    Any Information That May Result in a Lower Sentence Under the Guide-

17   lines.  The Government must produce this information under *Brady v. Maryland*, 373 U.S. 83

18   (1963).  This request includes any cooperation or attempted cooperation by Defendant as well

19   as any information that could affect any base offense level or specific offense characteristic

20   under Chapter Two of the Sentencing Guidelines.  Defendant also moves for a copy of any

21   information relevant to a Chapter Three adjustment, a determination of the defendant's criminal

22   history, and information relevant to any other application of the Guidelines.

23          7.    Defendant's Prior Record.  Under FED. R. CRIM. P. 16(a)(1)(B), Defendant

24   specifically moves for a copy of Defendant's prior criminal record, if any, as is within the

25   possession, custody, or control of the government.  Defendant specifically requests that the copy

26   be complete and legible.

27          8.    Any Proposed 404(b) Evidence.  The government must produce evidence

28   of "other acts" under FED. R. CRIM. P. 16(a)(1)(C) and FED. R. EVID. 404(b), 609.  *See United*

1  *States v. Vega*, 188 F.3d 1150, 1154 (9th Cir. 1999) (holding that Rule 404(b) "applies to all

2  'other acts,' not just bad acts").  This request includes any TECS records the Government

3  intends to introduce at trial, whether in its case-in-chief, for possible impeachment, or in

4  rebuttal.  *Id.*  In addition, under Rule 404(b), Defendant specifically requests the government

5  "provide reasonable notice in advance of trial . . . of the general nature" of any evidence the

6  government proposes to introduce under FED. R. EVID. 404(b) at trial.  *See id.* at 1154-55.

7  Additionally, Defendant requests that such notice be given ***three weeks*** before trial to give the

8  defense time to adequately investigate and prepare for trial.

9          9.    <u>Evidence Seized</u>. Under Fed. R. Crim. P. 16(a)(1)(C), the defense moves

10  for a copy of discovery of evidence seized as a result of any search.

11          10.    <u>Tangible Objects</u>. Under Fed. R. Crim. P. 16(a)(2)(C), Defendant specific-

12  ally requests the opportunity to inspect and copy and test, if necessary, all other documents and

13  tangible objects, including any books, papers, documents, photographs, buildings, automobiles,

14  or places, or copies, depictions, or portions thereof which are material to the defense or intended

15  for use in the government's case-in-chief, or were obtained from or belong to Defendant.

16          11.    <u>Evidence of Bias or Motive to Lie</u>. Defendant moves for production of any

17  evidence that any prospective Government witness is biased or prejudiced against Defendant,

18  or has a motive to falsify or distort his or her testimony. *Pennsylvania v. Ritchie*, 480 U.S. 39,

19  57-58 (1987); *United States v. Strifler*, 851 F.2d 1197, 1201-02 (9th Cir. 1988).

20          12.    <u>Impeachment Evidence</u>. Defendant moves for production of any evidence

21  that any prospective Government witness has engaged in any criminal act whether or not

22  resulting in a conviction and whether any witness has made a statement favorable to the

23  defendant. *See* FED. R. EVID. 608-09, 613; *Brady v. Maryland*, 373 U.S. 83 (1963); *Strifler*, 851

24  F.2d at 1201-02; *Thomas v. United States*, 343 F.2d 49, 53-54 (9th Cir. 1965).

25          13.    <u>Evidence of Criminal Investigation of Any Government Witness</u>. Defend-

26  ant moves for production of any evidence that any prospective witness is under investigation by

27  federal, state or local authorities for any criminal conduct.

28

1    14.    <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or</u>

2    <u>Truth Telling</u>.  Defendant moves for production of any evidence, including any medical or

3    psychiatric report or evaluation, that tends to show any prospective witness' ability to perceive,

4    remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever

5    used narcotics or any other controlled substance, or has ever been an alcoholic.  *See Strifler*, 851

6    F.2d at 1201-02.

7    15.    <u>Witness Addresses</u>.  Defendant moves for production of the name and last

8    known address of (1) each prospective Government witness, ***and*** (b) every witness to the crime

9    or crimes charged (or any of the overt acts committed in furtherance thereof) who will *not* be

10    called as a Government witness.

11    16.    <u>Names of Witnesses Favorable to the Defendant</u>.  Defendant moves for

12    production of the name of any witness who made an arguably favorable statement concerning

13    Defendant.  *Chavis v. North Carolina*, 637 F.2d 213, 223 (4th Cir. 1980); *Jones v. Jago*, 575

14    F.2d 1164, 1168 (6th Cir. 1978); *Hudson v. Blackburn*, 601 F.2d 785 (5th Cir. 1979); *Jackson*

15    *v. Wainwright*, 390 F.2d 288 (5th Cir. 1968).

16    17.    <u>Statements Relevant to the Defense</u>.  Defendant moves for disclosure of

17    any statement that may be "relevant to any possible defense or contention" that my client might

18    assert.  *United States v. Bailleaux*, 685 F.2d 1105 (9th Cir. 1982).  This includes in particular

19    any statements by any percipient witnesses.

20    18.    <u>Jencks Act Material</u>.  Defendant moves for production in advance of trial

21    of all material, including dispatch tapes, which the Government must produce pursuant to the

22    Jencks Act, 18 U.S.C. § 3500 and FED. R. CRIM. P. 26.2.  Advance production will avoid the

23    possibility of delay at the request of defendant to investigate the Jencks material.  A verbal

24    acknowledgment that "rough" notes constitute an accurate account of the witness' interview is

25    sufficient for the report or notes to qualify as a statement under § 3500(e)(1).  *Campbell v.*

26    *United States*, 373 U.S. 487, 490-92 (1963).  In *United States v. Boshell*, 952 F.2d 1101 (9th Cir.

27    1991), the Ninth Circuit held that when an agent goes over interview notes with the subject of

28    the interview, the notes are subject to the Jencks Act.  *See also Riley*, 189 F.3d at 806-08.  The

1  defense specifically requests pretrial production of these statements so that the court may avoid

2  unnecessary recesses and delays for defense counsel to properly use any Jencks statements and

3  prepare for cross-examination.

4       19.    *Giglio* Information.  Pursuant to *Giglio v. United States*, 405 U.S. 150

5  (1972), Defendant moves for production of all statements or promises, express or implied, made

6  to any Government witnesses, in exchange for their testimony in this case, and all other

7  information which could arguably be used for the impeachment of any Government witness.

8       20.    Agreements Between the Government and Witnesses.  Defendant moves

9  for discovery regarding any express or implicit promise, understanding, offer of immunity, of

10  past, present, or future compensation, or any other kind of agreement or understanding, includ-

11  ing any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability,

12  between any prospective Government witness and any federal, state or local government.  This

13  request also includes any discussion with a potential witness about, or advice concerning, any

14  contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the

15  advice not followed.

16       21.    Informants and Cooperating Witnesses.  Defendant moves for disclosure

17  of the names and addresses of all informants or cooperating witnesses used, or to be used, in this

18  case, and in particular, disclosure of any informant who was a percipient witness in this case or

19  otherwise participated in the crime charged against Defendant.  The Government must disclose

20  the informant's identity and location, as well as disclose the existence of any other percipient

21  witness unknown or unknowable to the defense.  *Roviaro v. United States*, 353 U.S. 53, 61-62

22  (1957).  The Government must disclose any information derived from informants which excul-

23  pates or tends to exculpate Defendant.  Defendant also moves for disclosure of any information

24  indicating bias on the part of any informant or cooperating witness.  *Giglio*, 405 U.S. at 153-55.

25  Such information should include what inducements, favors, payments, or threats were made to

26  the witness to secure cooperation with the authorities.

27       22.    Personnel Records of Government Officers Involved in the Arrest.

28  Defendant moves for production of all citizen complaints and other related internal affairs

1    documents involving any of the immigration officers or other law enforcement officers who

2    were involved in the investigation, arrest and interrogation of Defendant.  *See Pitchess v.*

3    *Superior Court*, 11 Cal. 3d 531, 539 (1974).  Because of the sensitive nature of these documents,

4    defense counsel will be unable to procure them from any other source.

5             23.    Government Examination of Law Enforcement Personnel Files.  Defendant

6    requests that the Government examine the personnel files and any other files within its custody,

7    care or control, or which could be obtained by the government, for all testifying witnesses,

8    including testifying officers.  Defendant requests the attorney for the Government review these

9    files for evidence of perjury or other similar dishonesty, or any other material relevant to

10   impeachment, or any information that is exculpatory, pursuant to its duty under *United States*

11   *v. Henthorn*, 931 F.2d 29, 30-31 (9th Cir. 1991).  The obligation to examine files arises by virtue

12   of the defense making a demand for their review.  The Ninth Circuit in *Henthorn* remanded for

13   *in camera* review of the agents' files because the government failed to examine the files of

14   agents who testified at trial.  This Court should therefore order the Government to review all

15   such files for all testifying witnesses and turn over any material relevant to impeachment or that

16   is exculpatory to Defendant before trial.  Defendant specifically requests that the prosecutor, not

17   the law enforcement officers, review the files in this case.  The duty to review the files, under

18   *Henthorn*, should be the prosecutor's.  Only the prosecutor has the legal knowledge and ethical

19   obligations to fully comply with this request.  *See United States v. Jennings*, 960 F.2d 1488,

20   1492 (9th Cir. 1992); *see also Kyles v. Whitley*, 514 U.S. 438, 437 (1995) (prosecutors have "a

21   duty to learn of any favorable evidence known to the others acting on the government's behalf

22   in the case, including the police").

23            24.    Expert Summaries.  Defendant moves for production of written summaries

24   of all expert testimony the Government intends to present under Federal Rules of Evidence 702,

25   703 or 705 during its case-in-chief, written summaries of the bases for each expert's opinion,

26   and written summaries of the experts' qualifications.  FED. R. CRIM. P. 16(a)(1)(E)-(G).

27            25.    Reports of Scientific Tests or Examinations.  Under Fed. R. Crim. P.

28   16(a)(1)(D), Defendant moves for discovery of the reports of all tests and examinations

conducted upon the evidence in this case, including but not limited to any fingerprint analysis or chemical tests of the substance found in the car my client was driving, that is within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and which are material to the preparation of the defense or which are intended for use by the government as evidence-in-chief at trial.

26.    Residual Request.  Defendant intends by this discovery motion to invoke the right to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States.  This request specifically includes all subsections of Rule 16.  Defendant requests that the Government provide Defendant and his attorney with the above requested material sufficiently in advance of trial to avoid unnecessary delay before trial and before cross-examination.

## III.    MOTION TO PRESERVE EVIDENCE

Request for Preservation of Evidence.  Defendant specifically moves for the preservation of all dispatch tapes and any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the Government and which relates to the arrest or the events leading to the arrest in this case.  *See Riley*, 189 F.3d at 806-08.  Defendant further requests that the government be ordered to question all the agencies and individuals involved in the prosecution and investigation of this case to determine if such evidence exists, and if it does exist to instruct those parties to preserve it.  This request also includes any material or percipient witness who might be deported or is otherwise likely to become unavailable (e.g., undocumented persons and transients).

## IV.    LEAVE TO FILE FURTHER MOTIONS

Pursuant to FED. R. CRIM. P. 16, the Government has a continuing duty to disclose discovery to defense counsel.  As additional information comes to light, the defense may find it necessary to file further motions or supplement these motions.  Defendant hereby requests leave to do so.

1

## V.    <u>CONCLUSION</u>

2

      For the reasons stated above, Defendant respectfully requests that this Court grant the

3

foregoing motions.

4

Dated: <u>*July 2, 2008*</u>                                    <u>   s/*Kurt David Hermansen*   </u>

5

                                      Attorney for Defendant

6

                   Email:  KDH@KurtDavidHermansen.com

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28